## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONNELL PRICE,** | : | |
| **Plaintiff,** | : | |
| | : | **No. 1:18-cv-00583** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **W. TED WILLIAMS, et al.,** | : | |
| **Defendants** | : | |

### MEMORANDUM

Presently before the Court is a motion for summary judgment filed by Defendants W. Ted Williams ("Williams"), Activity Manager Gray ("Gray"), Unit Manager Alexander ("Alexander"), Unit Manager Lechner ("Lechner"), Facility Manager M. Garman ("Garman"), and Secretary John Wetzel ("Wetzel").  (Doc. No. 68.)  For the reasons set forth below, the Court will grant the motion.

## I.     BACKGROUND

Pro se Plaintiff Donnell Price ("Plaintiff"), who is presently confined at the State Correctional Institution Rockview in Bellefonte, Pennsylvania ("SCI Rockview"), initiated the above-captioned action on March 13, 2018 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Williams, Gray, Alexander, Lechner, Garman, Wetzel, Hans Reisinger ("Reisinger"), Nurse Ficks ("Ficks"), Dr. Doll ("Doll"), and Dr. Bainbridge ("Bainbridge"). (Doc. No. 1.)  The above-captioned case is proceeding on Plaintiff's amended complaint, filed on January 4, 2019, against Defendants Williams, Gray, Alexander, Lechner, Garman, Wetzel, Reisinger, Doll, and Bainbridge.  (Doc. No. 42.)  Plaintiff alleges that on March 7, 2016, he was using a pull-up bar at SCI Rockview when the bar broke and he fell.  (Id. ¶¶ 19-20.)  Plaintiff maintains that he suffered various injuries and did not receive adequate medical treatment for those injuries.  (Id.)  Plaintiff states further that Defendants refused to accommodate his need for

a bottom cell assignment and to eat meals in his cell.  (Id. ¶¶ 41-53, 108-22.)  Based on these

allegations, Plaintiff asserts that Defendants Williams, Gray, Alexander, Lechner, Haldman,

Garman, Wetzel, Doll, Reisinger, and Bainbridge violated his Eighth Amendment rights by

demonstrating deliberate indifference to his medical needs and that Defendants Haldman,

Alexander, Garman, and Wetzel violated his First Amendment rights by retaliating against him.

(Id. ¶¶ 152-67.)  Plaintiff also asserts a medical malpractice claim against Defendants Williams,

Reisinger, Doll, and Bainbridge pursuant to Pennsylvania state law.  (Id. ¶¶ 168-70.)  Plaintiff

requests declaratory and injunctive relief, as well as damages.  (Id. ¶ 171.)

Defendants Alexander, Garman, Gray, Haldman, Lechner, Wetzel, and Williams filed an

answer to the amended complaint on February 8, 2019.  (Doc. No. 49.)  Defendants Doll and

Reisinger filed a motion to dismiss on February 14, 2019.  (Doc. No. 50.)  In an Order dated

March 7, 2019, Magistrate Judge Carlson directed Plaintiff to respond to the motion to dismiss

on or before March 22, 2019.  (Doc. No. 52.)  Plaintiff, however, did not file a response.

Accordingly, in a Memorandum and Order dated April 16, 2019, the Court granted Defendants

Doll and Reisinger's motion to dismiss.  (Doc. Nos. 53, 54.)

In an Order dated August 15, 2019, the Court directed Plaintiff to show cause why

Defendant Bainbridge should not be dismissed pursuant to Rule 4(m) of the Federal Rules of

Civil Procedure.  (Doc. No. 59.)  Plaintiff filed a response (Doc. No. 60), and in an Order dated

September 11, 2019, the Court directed Plaintiff to provide information regarding Defendant

Bainbridge's current whereabouts within ninety (90) days (Doc. No. 61).  Plaintiff did not

provide such information.  Accordingly, in an Order dated January 30, 2020, the Court dismissed

Defendant Bainbridge without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil

Procedure.  (Doc. No. 67.)

After receiving extensions of time to do so (Doc. Nos. 62, 63, 65, 66), the remaining parties completed discovery and Defendants Williams, Gray, Alexander, Lechner, Haldman, Garman, and Wetzel filed their motion for summary judgment (Doc. No. 68) and supporting materials (Doc. Nos. 69, 70) on February 20, 2020.  To date, Plaintiff has filed neither a brief in opposition nor a motion seeking an extension of time to do so.  The Court, therefore, deems Defendants' motion unopposed.  See M.D. Pa. L.R. 7.6.  Accordingly, because the time for filing an oppositional brief has expired, Defendants' motion for summary judgment is ripe for disposition.  On May 8, 2020, Defendants filed a motion to dismiss the above-captioned case for failure to prosecute.  (Doc. No. 71.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  See id. (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement

required [to be filed by the movant], as to which it is contended that there exists a genuine issue

to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement

required to be served by the moving party will be deemed to be admitted." <u>See</u> L.R. 56.1.  A

party cannot evade these litigation responsibilities in this regard simply by citing the fact that he

is a <u>pro se</u> litigant.  These rules apply with equal force to all parties.  <u>See</u> <u>Sanders v. Beard</u>, Civ.

No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that <u>pro se</u> parties "are

not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>,

Civ. No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that <u>pro se</u>

parties must follow the Federal Rules of Civil Procedure).

## III.    STATEMENT OF MATERIAL FACTS[1]

On March 7, 2016, Plaintiff was using a pull-up bar at SCI Rockview when the pull-up

bar broke.  (Doc. No. 70 ¶¶ 1-2.)  Before the bar broke, Plaintiff "had no reason to believe there

was anything wrong with it."  (<u>Id.</u> ¶ 3.)  Plaintiff received medical attention that same day and

was provided with a crutch, an ice pack, and an Ace bandage.  (<u>Id.</u> ¶ 4.)  After Plaintiff reported

---

[1] The Local Rules provide that in addition to the requirement that a party file a brief in
opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion
for summary judgment shall include a separate, short and concise statement of material facts
responding to the numbered paragraphs set forth in the statement [of material facts filed by the
moving party] . . . as to which it is contended that there exists a genuine issue to be tried." <u>See</u>
M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the
record that support the statements.  <u>See id.</u>  Finally, the Rule states that the statement of material
facts required to be served by the moving party will be deemed to be admitted unless
controverted by the statement required to be served by the opposing party.  <u>See id.</u>  Unless
otherwise noted, the background information set forth herein is derived from Defendants'
statement of material facts.  (Doc. No. 70.)  Plaintiff failed to file a response to Defendants'
statement of material facts in compliance with M.D. Pa. L.R. 56.1.  Accordingly, the Court
deems the facts set forth by Defendants to be undisputed.  <u>See</u> Fed. R. Civ. P. 56(e)(2); M.D. Pa.
L.R. 56.1; <u>United States v. Alberto</u>, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb.
13, 2020) (concluding that "[f]ailure to file this [responsive statement of material facts] results in
admission of the moving party's statement of facts").

back pain, a nurse gave him ibuprofen and told him to keep using the crutch and Ace bandage.

(Id. ¶ 5.)

Plaintiff saw medical staff again on March 16, 2016.  (Id. ¶ 6.)  During that visit, he was

told to continue the ibuprofen and that his X-rays were normal.  (Id.)  Between March 16, 2016

and June 2016, Plaintiff "was seen by medical staff more than once, and continued to receive

medication for his back pain."  (Id. ¶ 7.)  Eventually, Plaintiff's housing status was changed

because he was having difficulty using stairs; "that decision was made by a Unit [Manager] in

conjunction with medical."  (Id. ¶ 8.)

At some point, Plaintiff complained to Defendants Haldman and Garman that Defendant

Alexander had not helped him with his housing assignment.  (Id. ¶ 9.)  Plaintiff also complained

that Defendant Williams did not provide information to him regarding his medical treatment

when responding to a grievance.  (Id. ¶ 10.)  Ultimately, the medical department "made the

decision to take away the Plaintiff's crutches and cane."  (Id. ¶ 11.)  However, Plaintiff was seen

by medical staff every other day to use an extraction machine.  (Id. ¶ 12.)

During this time, Defendant Haldman allowed Plaintiff to eat in his cell because Plaintiff

was having trouble sitting down in the dining hall.  (Id. ¶ 13.)  After a few months had passed,

Defendant Haldman told the medical department to stop allowing Plaintiff to eat his meals in his

cell.  (Id. ¶ 14.)  When Plaintiff "was unable to eat in the dining hall (or not eat while standing up

in the dining hall), he was able to eat commissary in his cell instead."  (Id. ¶ 15.)

IV.    DISCUSSION

A.    Claims Against Defendants Williams, Garman, and Wetzel

It appears that Plaintiff seeks to hold Defendants Williams, Garman, and Wetzel liable

based solely upon their responses to his various grievances.  (Doc. No. 42 ¶¶ 50-54, 72-78.)

Defendants argue that involvement in responding to Plaintiff's grievances is insufficient to allow

Plaintiff to maintain his claims against Defendants Williams, Garman, and Wetzel.  (Doc. No. 69

at 6.)  For the reasons set forth below, the Court agrees with Defendants.

Inmates do not have a constitutional right to prison grievance procedures.  See Lions v.

Wetzel, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015).  The filing of a

grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the

response to an inmate's grievance, do not establish the involvement of officials and

administrators in any underlying constitutional deprivation.  See Pressley v. Beard, 266 F.

App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any

additional defendants who were sued based on their failure to take corrective action when

grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x. 923, 925

(3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an

inmate's later-filed grievances do not establish the involvement of those officials and

administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., No. 06-

1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional

officials violated an inmate's constitutional rights by failing to follow proper procedure or take

corrective action following his submission of an institutional grievance are generally without

merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint

alleging that prison officials failed to respond to the inmate plaintiff's grievance does not state a

constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998); Rode v. Dellarciprete, 845 F.2d 1195,

1207 (3d Cir. 1988) (concluding that where a defendant, after being informed of the violation

through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged

wrong is not enough to show that the defendant had the necessary personal involvement); Ayers

v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action). Consequently, any allegations asserted by Plaintiff in an attempt to establish liability against Defendants Williams, Garman, and Wetzel based solely upon the substance of their respective responses to Plaintiff's grievances do not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (providing that involvement in the post-incident grievance process is not a basis for liability); see also Brooks, 167 F. App'x at 925; Ramos, 2006 WL 2129148, at *3.

It also appears that Plaintiff attempts to assert claims against Defendant Bradley based upon his respective supervisory position. Supervisors, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). The United States Court of Appeals for the Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to 42 U.S.C. § 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."

See Merring v. City of Carbondale, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

In the instant case, Plaintiff fails to establish plausible supervisory liability claims against Defendants Williams, Garman, and Wetzel.  Plaintiff cites no evidence from which a reasonable jury could conclude that Defendants Williams, Garman, and Wetzel directed others to violate Plaintiff's constitutional rights, knew of such violations and acquiesced in them, or maintained a policy or custom that caused Plaintiff constitutional harm.  See A.M. ex rel. J.M.K., 372 F.3d at 586.  Accordingly, the Court will grant Defendants summary judgment with respect to Plaintiff's claims against Defendants Williams, Garman, and Wetzel.

**B.     Eighth Amendment Claims**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment of prisoners.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (noting that "[t]o violate the Cruel and Unusual Punishment Clause, a prison official must have a sufficiently culpable state of mind. . . .  In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety.").  An Eighth Amendment claim includes both objective and subjective components.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component.  See id.  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."  See id.

**1.     Medical Care**

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  In order to establish an Eighth Amendment deliberate indifference

claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse, 182 F.3d at 197. The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." See Farmer, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842)). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." See id.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." See Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious

10

medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain.  See id.  Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. See White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) (noting that "medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, see Young v. Kazmerski, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment.  See White, 897 F.2d at 108-10.  Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim.  See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-25 (7th Cir. 1996); Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir.1994); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); see also Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

In the instant case, Defendants do not challenge whether Plaintiff had a serious medical need.  Rather, they maintain that they were not responsible for Plaintiff's medical care and that he was "consistently seen by medical personnel."  (Doc. No. 69 at 5.)  The Court agrees with Defendants.  The record before the Court establishes that Plaintiff received medical care from the time of his injury.  (Doc. No. 70-1 at 20-21.)  Nothing in the record suggests that Defendants

were not "justified in believing that [Plaintiff was] in capable hands" since he was receiving medical treatment.  See Spruill, 372 F.3d at 236.  Likewise, there is no suggestion that Defendants believed or had actual knowledge that medical staff at SCI Rockview were either mistreating or not treating Plaintiff.  See id.; see also Deshields v. Moclock, No. 1:18-cv-1709, 2019 WL 4082674, at *4 (M.D. Pa. Aug. 29, 2019) (noting that summary judgment is appropriate "with respect to Eighth Amendment claims against health care administrators because they are not physicians and cannot assess the reasonableness of the treatment chosen by prison doctors") (citing McAleese v. Owens, 770 F. Supp. 255, 263 (M.D. Pa 1991)).  Moreover, to the extent that Plaintiff faults Defendants Alexander, Lechner, and Haldner for delaying his assignment to a cell on the bottom tier, there is no evidence before the Court suggesting that these Defendants could unilaterally make the determination that such an accommodation was warranted.  Rather, during his deposition, Plaintiff testified that unit managers make decisions regarding cell and bunk assignments "in conjunction with medical."  (Doc. No. 70-1 at 22); see Matthews v. Pa. Dep't of Corr., 613 F. App'x 163, 170-71 (3d Cir. 2015) (concluding, under Spruill, that while "corrections officers were aware of [the inmate-plaintiff's] difficulty descending from his top bunk, using the stairs, and moving about on crutches, they were also justified in trusting that the medical professionals who regularly treated [the inmate-plaintiff] would recommend a bunk or cell reassignment if he needed one").

Given that the Court previously dismissed Plaintiff's claims against Defendants Reisinger and Doll, who provided medical care to Plaintiff, after concluding that his allegations against them "amount[ed] to disagreement with the medical treatment provided" (Doc. No. 53 at 10), the Court agrees with Defendants that "it would defy logic to hold the non-medical personnel liable when the actual providers were not liable" (Doc. No. 69 at 7).  Consequently, the Court will

12

grant Defendants summary judgment as to Plaintiff's Eighth Amendment claim concerning medical care.

### 2.    Meals

Defendants have construed Plaintiff's amended complaint as raising an Eighth Amendment claim regarding his inability to eat meals in the dining hall.  (Doc. No. 69 at 8-9.)  As noted above, Plaintiff alleges that the medical department granted him permission to receive his meals in his cell so that he did not have to walk to the dining hall, but that Defendant Haldman terminated that status approximately forty (40) days later.  (Doc. No. 42 ¶¶ 108-09.)  He maintains that he received a misconduct for disobeying a direct order when his pain prevented him from sitting down in the dining hall during breakfast.  (Id. ¶ 112.)  Plaintiff states that he "went many days without [eating] out of the [dining] hall and nothing was done," but that he was able to eat commissary in his cell.  (Id. ¶¶ 121-22.)

"Prison officials violate an inmate's Eighth Amendment rights when they deprive [him] of 'a single identifiable human need such as food.'"  Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015) (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).  "[O]nly a substantial deprivation of food to a prisoner" rises to the level of an Eighth Amendment violation.  See Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009); see also Bennett v. PrimeCare Med., Inc., No. 3:18-cv-517, 2019 WL 7856757, at *7 (M.D. Pa. Dec. 20, 2019) (noting that "[a] systemic failure to provide food in sufficient quantity to maintain normal health violates the Eighth Amendment"), report and recommendation adopted, 2020 WL 564940 (M.D. Pa. Feb. 5, 2020).

In the instant case, Plaintiff cites no evidence to the Court suggesting that Defendants, particularly Defendant Haldman, deliberately caused a substantial deprivation of food.  While

Plaintiff alleges that Defendant Haldman told medical staff not to allow Plaintiff to eat in his cell, there is nothing in the record before the Court establishing that Defendant Haldman was involved in the incidents where Plaintiff was told by unidentified corrections officers that he could not eat in the dining hall while standing.  Moreover, Plaintiff has not provided any evidence suggesting that he was unable to "maintain normal health" because of the alleged deprivation of meals.  See Bennett, 2019 WL 7856757, at *7.  While Plaintiff alleges he "lost over 20 [pounds] because of the degeneration of health" (Doc. No. 42 ¶ 143), his amended complaint is unsworn and, therefore, may not be treated as an affidavit in opposition to Defendants' motion for summary judgment.  See Ziegler v. Eby, 77 F. App'x 117, 120 (3d Cir. 2003).  Rather, the evidence before the Court establishes that Plaintiff was able to eat commissary in his cell on days that he was unable to eat in the dining hall and was provided meals in his cell in the Restricted Housing Unit.  (Doc. No. 70-1 at 28-31.)  Accordingly, the Court will grant Defendants summary judgment with respect to Plaintiff's Eighth Amendment claim concerning the deprivation of meals.[2]

---

[2] While unclear, Plaintiff may also be raising an Eighth Amendment conditions of confinement claim against Defendant Gray for failing to ensure that the pull-up bar was well maintained. (Doc. No. 42 ¶¶ 25-28.)  Plaintiff suggests that Defendant Gray "act[ed] as if he couldn't locate the broken [pull-up] bar station" and indicates that it "was not fixed until May 2018."  (Id. ¶¶ 26, 28.)  To succeed on such a claim, a plaintiff must establish that "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm."  See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2015).  In the instant case, Plaintiff fails to cite evidence to the Court suggesting that Defendant Gray was aware that the pull-up bar was broken prior to Plaintiff using it and that he was deliberately indifferent to any risk of harm posed by the broken bar.  Accordingly, to the extent Plaintiff asserts a conditions of confinement claim, Defendants are entitled to summary judgment on this claim, as well.

C.      **First Amendment Claim**

Plaintiff next alleges that Defendants Wetzel, Garman, Alexander, and Haldman violated his First Amendment rights by retaliating against him for submitting grievances. (Doc. No. 42 ¶¶ 161-67.) Specifically, it appears that Plaintiff believes Defendants Alexander and Haldman retaliated by delaying his housing reassignment, that Defendant Haldman retaliated by directing the medical department to terminate Plaintiff's permission to eat meals in his cell, and that Defendants Wetzel and Garman retaliated through their responses to his grievances. (Id. ¶¶ 50-164-65.)

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied when the adverse action is "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." See id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." See Rauser, 241 F.3d at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on

its own, support an inference of causation.  See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997).  If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  See Rauser, 241 F.3d at 334.  "This is often referred to as the 'same decision defense.'"  Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016).  If the prison officials can make this showing, it defeats the retaliation claim.  See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

Plaintiff engaged in protected activity by filing grievances.  See Mearin v. Vidonish, 450 F. App'x 100, 102 (3d Cir. 2011).  The Court, therefore, must next consider whether Defendants Alexander, Haldman, Garman, and Wetzel took adverse action against him.  To be actionable under § 1983, the adverse action "need not be great" but "must be more than de minimus."  See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006).  Plaintiff appears to suggest that Defendants Garman and Wetzel took adverse action against him by denying his grievances.  The Third Circuit has noted, however, that "[t]he denial of grievances is not an 'adverse action' for retaliation purposes."  See Owens v. Coleman, 629 F. App'x 163, 167 (3d Cir. 2015).  Accordingly, Plaintiff cannot maintain his retaliation claim against Defendants Garman and Wetzel.  However, the Court assumes without deciding that Defendants Alexander and Haldman's act of delaying his housing reassignment to a bottom tier cell and Defendant Haldman's act of directing the medical department to terminate Plaintiff's permission to eat meals in his cell constitutes adverse action sufficient to satisfy the second element of a retaliation claim.

Defendants argue that Plaintiff has not demonstrated a causal connection between these actions and his act of filing grievances.  (Doc. No. 69 at 11.)  While causation may be established by direct or circumstantial evidence, "motivation is also never subject to proof by direct evidence."  See Watson, 834 F.3d 417, 422 (3d Cir. 2016).  Thus, motivation is typically demonstrated by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link."  See id.

The Court agrees with Defendants that Plaintiff has not demonstrated a causal connection.  Nothing in the evidence presently before the Court would permit a finding that Defendants Alexander and Haldman delayed Plaintiff's housing reassignment in retaliation for Plaintiff's act of filing grievances.  Rather, as discussed supra, the evidence establishes that unit managers make housing assignment decisions in conjunction with the medical department. Nothing in the record permits an inference that Defendants Alexander and Haldman deliberately ignored a medical directive that Plaintiff receive an assignment to a bottom tier cell because of Plaintiff's use of the grievance system.  Plaintiff, therefore, cannot maintain his retaliation claim regarding this action, for the relevant evidence of record indicates that Defendants Alexander and Haldman "would have made the same decision absent the protected conduct."  See Rauser, 241 F.3d at 334; see also Carter, 292 F.3d at 159.  Moreover, in his deposition, Plaintiff stated that he "[had] no idea" why Defendant Haldman told the medical department to discontinue the directive that he receive meals in his cell.  (Doc. No. 70-1 at 27.)  Furthermore, Plaintiff indicated that Defendant Haldman took this action "a couple of months" after Plaintiff started taking his meals in his cell.  Such a passage of time is not unusually suggestive to infer causation. See Liddick v. Tritt, No. 1:14-cv-1813, 2018 WL 3639858, at *7 (M.D. Pa. June 29,

2018) (discussing such a claim involving the passage of two (2) months), <u>report</u> <u>and</u>
<u>recommendation</u> <u>adopted</u>, 2018 WL 3631872 (M.D. Pa. July 31, 2018); <u>Burt v. Lane</u>, No. 1:16-
cv-1180, 2017 WL 4681807, at *9-10 (M.D. Pa. Apr. 4, 2017) (collecting decisions indicating
that temporal proximities of seventeen (17) days, three (3) weeks, seven (7) weeks, and between
one (1) to three (3) months all were insufficient to establish causation and finding that a six (6)-
month temporal gap defeated the inmate-plaintiff's retaliation claim).  Plaintiff's speculations
that Defendants Alexander and Haldman retaliated against him are simply insufficient to create a
genuine issue of material fact to survive summary judgment.  <u>See</u> <u>Alexander v. Forr</u>, 297 F.
App'x 102, 105 (3d Cir. 2008) (concluding that district court properly granted summary
judgment to defendants on inmate-plaintiff's retaliation claim because the inmate's "allegations
of causation typically amount[ed] to no more than unsupported assertions; indeed, he often
appear[ed] to rely on his unwarranted belief that causation is self-evident").

> ### D.    Medical Malpractice Claim

Plaintiff also asserts a medical malpractice claim pursuant to Pennsylvania state law
against Defendant Williams.  (Doc. No. 42 ¶¶ 168-70.)  Defendants assert that the Court may
decline supplemental jurisdiction over this claim if all of Plaintiff's federal claims are dismissed
or, alternatively, grant summary judgment because Plaintiff failed to file the requisite certificate
of merit to support his claim.  (Doc. No. 69 at 13-14.)

Under Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, plaintiffs seeking to
raise medical malpractice claims must file a valid certificate of merit.  That rule states in
pertinent part:

> (a) In any action based upon an allegation that a licensed professional deviated from
> an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if
> not represented, shall file with the complaint or within sixty days after the filing of
> the complaint, a certificate of merit signed by the attorney or party that either[:]

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard; or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3. The requirements of Rule 1042.3 are deemed substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim. See Liggon-Reading v. Estate of Sugarman, 659 F.3d 258, 262-65 (3d Cir. 2011); Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007). This requirement applies with equal force to counseled complaints and to pro se medical malpractice actions brought under state law. See Hodge v. Dep't of Justice, 372 F. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file a certificate of merit); Levi v. Lappin, No. 07-1839, 2009 WL 1770146, at *1 (M.D. Pa. June 22, 2009).

Here, Plaintiff has failed to file a certificate of merit. The usual consequence for failing to file a certificate of merit is dismissal of the claim without prejudice. See Booker v. United States, 366 F. App'x 425, 427 (3d Cir. 2010). However, dismissal with prejudice is proper when the statute of limitations has run on the claim. See Smith v. Bolava, No. 14-cv-5753, 2015 WL 2399134, at *3 (E.D. Pa. May 20, 2015) (quoting Booker, 366 F. App'x at 427). Pennsylvania's statute of limitations for medical malpractice claims is two years. See 42 Pa. Cons. Stat. § 5524(7). Here, the allegations in Plaintiff's amended complaint concern events that occurred

19

in 2016 and 2017.  Thus, the statute of limitations has run on Plaintiff's medical malpractice claim, and it is subject to dismissal with prejudice.  <u>See</u> <u>Smith</u>, 2015 WL 2399134, at *3. Accordingly, the Court will grant summary judgment to Defendants with respect to Plaintiff's medical malpractice claim.

## V.      CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 68) will be granted.  Defendants' motion to dismiss for failure to prosecute (Doc. No. 71) will be denied as moot.  An appropriate Order follows.